[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
This action arises out of a prior lawsuit brought by the defendant, Attorney Irwin J. Gordon, on behalf of his client, codefendant, Hall-Brooke Foundation (Hall-Brooke), against the plaintiff, John Fitzpatrick. In that lawsuit, Hall-Brooke claimed that the plaintiff CT Page 14358 failed to fully pay for services it allegedly provided to him. The case was assigned to arbitration and scheduled to be heard on January 7, 1994. The plaintiff's attorney, Laurence Parnoff, failed to appear at the arbitration hearing due to a snow storm and a default judgment was entered in favor of Hall — Brooke against the plaintiff. On February 23, 1994, a judgment lien was placed on the plaintiff's real estate at 689 Fairchild Road in Trumbull, Connecticut. On June 3, 1998, the plaintiff initiated the present lawsuit by filing a three count complaint against Hall-Brooke and Gordon for "tortious conduct" (count one), violation of General Statutes § 49-8(c) (count two), and violation of the Connecticut Unfair Trade Practices Act (CUTPA) (count three). The defendants moved to strike the complaint in its entirety. The court, Skolnick, J., struck all three counts of the complaint by order dated September 30, 1998.
On October 13, 1998, the plaintiff filed a substitute six count complaint. Counts one, two, and three are directed against Hall-Brooke and are not subject to the present motion.[1] In count four of the substituted complaint, the plaintiff claims that Gordon acted improperly in obtaining a default judgment against her property, and as a result of this "tortious conduct," she incurred damages. In count five, the plaintiff alleges that she has suffered statutory damages under General Statutes § 49-8(c) as a result of Gordon's failure to release the judgment lien on her property. In count six, the plaintiff contends that Gordon violated CUTPA.[2] On May 28, 1999, Gordon filed a motion for summary judgment as to counts four, five, and six of the plaintiff's substituted complaint. Gordon filed a memorandum in support of his motion. On June 10, 2000, the plaintiff filed an objection to Gordon's motion for summary judgment and a memorandum in support thereof.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Witt v. St. Vincent's Medical Center,252 Conn. 363, 368, 746 A.2d 753 (2000). "[E]ven with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." Wadia Enterprises, Inc. v. Hirschfeld,
CT Page 14359224 Conn. 240, 250, 618 A.2d 506 (1992). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." (Internal quotation marks omitted.) Reynolds v. Chrysler First CommercialCorp., 40 Conn. App. 725, 731, 673 A.2d 573, cert. denied, 237 Conn. 913,675 A.2d 885 (1996).
A. Count Four
In count four of the substituted complaint, the plaintiff alleges that during the January 7, 1994, arbitration hearing Gordon acted tortiously in obtaining a default judgment against her property. The plaintiff argues that Gordon intentionally led the court into error and engaged in conduct contrary to the General Statutes and Practice Book requirements for arbitration proceedings. Specifically, the plaintiff alleges that Gordon improperly requested a default judgment despite the absence of opposing counsel and his own witnesses, and thus failed to abide by arbitration procedures. Furthermore, the plaintiff claims that Gordon intentionally failed to provide the plaintiff's attorney with notice of Gordon's request for default and motion for judgment and took unfair advantage of the plaintiff.
Gordon moves for summary judgment as to count four on the grounds that the statements he made at the arbitration hearing are absolutely privileged and may not form the basis of a civil action. Furthermore, Gordon argues that this count is barred by the statute of limitations and laches. In response, the plaintiff contends that Gordon's statements are not absolutely privileged and that the plaintiff's cause of action is based not on the content of Gordon's statements, but rather on his tortious conduct and abuse of due process. The plaintiff also contends that the action is timely because the statute of limitations was tolled pursuant to the doctrine of continuing course of conduct.
"As a general rule, attorneys are not liable to persons other than their clients for negligent rendering of services." Krawczyk v. Stingle,208 Conn. 239, 244, 543 A.2d 733 (1988). Therefore, courts have been wary of allowing third parties to bring actions based on the conduct of an attorney in the course of representing a client and the Connecticut Supreme Court has "cautioned against providing an access to damages to a plaintiff adversely affected by the performance of legal services on behalf of someone whose interests were adverse to the plaintiff's."Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 728, 627 A.2d 374 (1993). In Mozzochi v. Beck, 204 Conn. 490, 495, 592 A.2d 171 (1987), the court noted that in permitting such a cause of action, it must be cognizant "not to adopt rules which will have a chilling and inhibitory effect on would-be litigants of justiciable issues." (Internal quotation marks CT Page 14360 omitted.) Therefore, there are few instances where an attorney representing a client may be sued by a third party and the scope of such causes of action are quite narrow. See id., 497.
"An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." (Internal quotation marks omitted.)Mozzochi v. Beck, supra, 204 Conn. 494. [A]lthough attorneys have a duty to their clients and to the judicial system not to pursue litigation that is utterly groundless, that duty does not give rise to a third party action for abuse of process unless the third party can point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation. Any other rule would ineluctably interfere with the attorney's primary duty of robust representation of the interests of his or her client." Id., 497.
Here, the plaintiff fails to provide evidence that Gordon engaged in "misconduct intended to cause specific injury outside of the normal contemplation of private litigation." Id. "[A]n incidental motive of spite or an ulterior purpose of benefit to the defendant is not sufficient to constitute a cause of action for abuse of process." (Internal quotation marks omitted.) Jackson v. R. G. Whipple, Inc., supra,225 Conn. 720. In arguing that Gordon's alleged violation of procedural requirements and statutory provisions constitutes "tortious conduct" or abuse of due process, the plaintiff seeks to greatly expand the narrow scope of the causes of action that a third party may bring against an attorney for conduct that the attorney engages in the course of representing a client. Moreover, in the context of abuse of process and legal malpractice, underlying allegations similar to those present in this case have been deemed legally insufficient. See Mozzochi v. Beck,
supra, 204 Conn. 497, 501.
Accordingly, Gordon's motion for summary judgment is hereby granted as to count four of the plaintiff's substituted complaint because Gordon is entitled to judgment as a matter of law).[3]
B. Count Five
In count five of the substituted complaint, the plaintiff alleges that she has suffered statutory damages under General Statutes §49-8(c)[4] as a result of Gordon's failure to release the lien against the plaintiff's property. Gordon moves for summary judgment as to count five on the ground that he did not violate General Statutes § 49-8.
General Statutes § 49-51 provides the proper mechanism for an interested party to challenge what may be an invalid lien. Under this CT Page 14361 section, the interested party may apply to the Superior Court for discharge of the lien. If a court finds that the lien was filed without just cause, then the court may render appropriate damages for any person aggrieved by the lien. In the present case, however, the plaintiff has not challenged the validity of the lien pursuant to § 49-51. Instead, the plaintiff seeks damages under § 49-8(c).
General Statutes § 49-8(c) provides damages for aggrieved parties if the mortgagee or plaintiff fails to execute or deliver a release of a lien within sixty days of written demand. Paragraphs (a) and (b) of § 49-8 enumerate circumstances in which execution and delivery of a release is required.[5] In the present case, the plaintiff failed to allege or provide evidence that the lien in question falls within any of the enumerated circumstances that call for immediate execution and delivery of a release of a lien. There is no evidence that the lien has been satisfied or partially released under §49-8(a), nor that it has become of no effect under §49-8(b) pursuant to §§ 52-322 or 52-324. Instead, the lien remains in effect despite the appeal of the underlying judgment, until a new judgment is rendered. See Scaffone v. Orlando G.Annulli Sons, Inc., Superior Court, judicial district of New Haven, Docket No. 321855 (January 17, 1992, Hodgson, J.) (8 CSCR 238), aff'd,29 Conn. App. 914, 614 A.2d 524 (1992). Furthermore, "[c]ompliance with the explicit terms of § 49-51 is such a strict requirement that it implicates the court's jurisdiction over the claim. Unless the complaint contains allegations which show that the plaintiff has complied with the terms' of the statute the court has no jurisdiction to entertain the action." Silano v. Springfield Sugar and Products Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 356667 (March 30, 2000, Mottolese, J.). See also Guilford Yacht Club Assn., Inc. v.Northeast Dredging, Inc., 192 Conn. 10, 13, 468 A.2d 1235 (1984). This analysis is equally controlling as to § 49-8(c). See Jastroch v.Chase Manhattan Bank, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 351712 (March 30, 2000, Mottolese, J.).
Because the plaintiff has not alleged or provided evidence that the lien in question has been satisfied or become of no effect, the plaintiff has not stated a claim under 49-8(c). Accordingly, Gordon's motion for summary judgment is granted as to count five of the plaintiff's substituted complaint.
B. Count Six
In count six of the substituted complaint, the plaintiff alleges that Gordon's actions constitute a violation of the Connecticut Unfair Trade Practices Act (CUTPA). Specifically, the plaintiff argues that Gordon's CT Page 14362 conduct, in violating the Practice Book and the General Statutes, was so outrageous and reckless as to constitute a violation of public policy and deprived the plaintiff of due process rights. Gordon moves for summary judgment as to count six on the ground that an attorney cannot be sued under CUTPA by their clients' opponents for action taken in the course of representation, and on the ground that this cause of action is barred by the statute of limitations and laches.
"[P]rofessional malpractice does not give rise to a cause of action under CUTPA." Beverly Hills Concepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, 247 Conn. 48, 79, 717 A.2d 724 (1998). Although attorneys are subject to CUTPA, public policy considerations require that "CUTPA covers only the entrepreneurial or commercial aspects of the profession of law. The noncommercial aspects of lawyering — that is, the representation of the client in a legal capacity — should be excluded for public policy reasons." Haynes v. Yale-New Haven Hospital,243 Conn. 17, 35, 699 A.2d 964 (1997).
In Jackson v. R.G. Whipple, Inc., supra, 225 Conn. 727-29, the Supreme Court held that an aggrieved party may not bring a private cause of action under CUTPA, against an opponent's attorney for actions taken by that attorney in the course of representing the opponent. The court warned that "[p]roviding a private cause of action under CUTPA to a supposedly aggrieved party for the actions of his or her opponent's attorney would stand the attorney-client relationship on its head and would compromise an attorney's duty of undivided loyalty to his or her client and thwart the exercise of the attorney's professional judgment on his or her client's behalf." Id., 727.
The plaintiff's cause of action is based on Gordon's noncommercial conduct in representing his client. As to the plaintiff's allegation that Gordon's conduct violated the plaintiff's rights to procedural due process, such rights are protected from "governmental rather than private deprivations. . . ." Owens v. New Britain General Hospital, 229 Conn. 592,602 n. 24, 643 A.2d 233 (1994).
Accordingly, defendant Gordon's motion for summary judgment is granted as to count six of the plaintiff's substituted complaint.[6]
Therefore, defendant's motion for summary judgment as to the fourth, fifth and sixth counts of the plaintiff's substituted complaint is granted in its entirety.
SKOLNICK, J.